UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MELINA ARMSTEAD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF ALAMEDA, et al., <br><br> Defendants. | Case No. 21-cv-05257-LB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** <br><br> Re: ECF Nos. 25, 26 |

**INTRODUCTION**

The plaintiffs — the wife and daughter of murder victim Miles Armstead — sued the County of Alameda and the City of Oakland for their alleged roles in Mr. Armstead's death. Mr. Armstead's killer, Jamal Thomas, threatened Mr. Armstead and his family for months before the murder. The plaintiffs contend that the City's police officers increased the risk that Mr. Thomas posed to them and caused Mr. Armstead's death by refusing to stop Mr. Thomas's behavior (despite the Armsteads' many 911 calls for help) and by effectively telling Mr. Thomas that they would do nothing. They contend that the County's probation officer similarly increased the risk of harm by ignoring the plaintiffs' reports, telling Mr. Thomas that his conduct was not a probation violation, and brushing off the plaintiffs' concerns in front of Mr. Thomas. Finally, the plaintiffs contend that the County increased the risk by how it handled Mr. Thomas's custody and release. Following his release, Mr. Thomas killed Mr. Armstead.

The plaintiffs claim (1) violations of the Due Process and Equal Protection clauses of the U.S. Constitution and 42 U.S.C. § 1983, (2) negligence and negligent hiring and supervision, (3) a violation of the requirements under California's Marsy's Law's for notice to victims of crime, and (4) a violation of California's Bane Act, Cal. Civ. Code § 52.1. The City moved to dismiss all claims, and the County moved to dismiss the Marsy's Law claim.

The plaintiffs did not oppose the dismissal of the Marsy's Law, negligent-hiring, and equal-protection claims. The court dismisses the Marsy's Law claim with prejudice and the other claims without prejudice. The court mostly denies the motion to dismiss the remaining claims. The alleged increased risk of harm — essentially a state-created danger — plausibly establishes the negligence, due-process, and Bane Act claims. The City is not immune for the negligence claim under Cal. Gov't Code §§ 845 and 846. But because the § 1983 claim is against the City, not an individual actor, the plaintiffs must allege a policy or practice that caused the due-process violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Henderson v. Cnty. of Santa Cruz*, No. 14-cv-03544-RMW, 2015 WL 225429, at *6 (N.D. Cal. Jan. 16, 2015). They came close with their description of a pattern of police behavior in this case, but they must allege a policy or practice generally. *Henderson*, 2015 WL 225429, at *6. The court gives leave to amend to cure this deficiency.

## STATEMENT

The Armsteads and Mr. Thomas were neighbors from 2017 until August 2019 and had a cordial relationship. After Mr. Thomas and his family were evicted in August 2019, Mr. Thomas lived there unlawfully starting in October 2019 and began harassing Mr. Armstead and his family. He "banged" on their front door, yelled at them, threw rocks through windows, and threatened to burn their house down. The plaintiffs attribute Mr. Thomas's conduct to his mental-health problems. The Armsteads called the Oakland Police Department for help approximately twenty times.[1]

---

[1] First Am. Compl. (FAC) – ECF No. 21 at 6–8 (¶¶ 17–22, 27); Opp'n – ECF No. 32 at 7. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

For example, on Thanksgiving Day 2019, the police responded to their 911 call and told the family, within earshot of Mr. Thomas, that they were understaffed and overworked and that their calls were not high priorities.[2] On December 20, 2019, the police responded to an incident where Mr. Thomas threw a rock through the Armsteads' front window and injured Mrs. Armstead, who was eight-weeks pregnant, causing her to bleed profusely and requiring her transportation by ambulance to a hospital for treatment. Again, the officers told the Armsteads — within "earshot of Mr. Thomas" — that they "would not be taking action in response."[3] The Armsteads talked with Mr. Thomas's County probation officer, who brushed off their concerns and told Mr. Thomas that his conduct was not a probation violation.[4] After the plaintiffs obtained a restraining order on the advice of Oakland police officers, and a neighbor served it, Mr. Thomas's conduct worsened. Over the next months, Mr. Thomas continued to harass the Armsteads, breaking their home's windows fourteen times.[5]

On February 26, 2020, Mr. Thomas was arrested, and the County served him with the restraining order.[6] The Armsteads asked for notice about the proceedings and Mr. Thomas's custody status under Marsy's Law.[7] On February 28, 2020, Mr. Thomas was released. No one notified the Armsteads.[8] On May 1, 2020, Mr. Thomas killed Mr. Armstead, who was doing yard work.[9]

Mr. Armstead's surviving wife and minor daughter sued the City and County for (1) negligence and wrongful death (essentially, a negligence claim), (2) a violation of Marsy's Law, Cal. Const., art. I, § 28(b), (3) negligent hiring and supervision, (4) violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and (5) a violation of the Bane Act.[10]

---

[2] FAC – ECF No. 21 at 6–7 (¶¶ 18–19).

[3] *Id.* (¶¶ 19, 23–24).

[4] *Id.* at 7–9 (¶¶ 23–30).

[5] *Id.* at 8 (¶¶ 25–27). The order mentions the interaction with the County probation officer for context.

[6] *Id.* at 9 (¶ 31).

[7] *Id.* (¶ 32).

[8] *Id.* at 9–10 (¶ 33).

[9] *Id.* at 10 (¶ 34).

[10] *Id.* at 11–15 (¶¶ 37–64).

The County moved to dismiss the plaintiffs' claim under Marsy's Law, and the City moved to dismiss all claims.[11] The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 626(b).[12] The court held a hearing on March 17, 2022.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the elements of a claim will not do. *Twombly*, 550 U.S. at 555 (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

---

[11] Mots. – ECF Nos. 25 & 26.

[12] Consents – ECF Nos. 8, 19, 24. The defaulting defendants are severed into a related case. Order – ECF No. 49.

# ANALYSIS

The plaintiffs did not oppose the motions to dismiss the Marsy's Law claim, which is dismissed with prejudice, or the City's motion to dismiss the negligent-hiring and equal-protection claims, which are dismissed without prejudice. The remaining claims are the due-process, negligence, and Bane Act claims. The plaintiffs plausibly pleaded a state-created danger and thus plausibly pleaded all claims. But because the § 1983 claim is against the City, not an individual actor, the plaintiffs must allege a policy or practice under *Monell* that caused the due-process violation. The court thus dismisses the due-process claim with leave to amend.

## 1. Marsy's Law

In 2008, California voters approved Proposition 9 (Marsy's Law), which amended the California Constitution and the Penal Code to "strengthen and increase the number of crime victims' rights." *People v. Marquez*, 56 Cal. App. 5th 40, 47 (2020). The plaintiffs' claim is based on the rights (1) "[t]o be informed, upon request, of the conviction, sentence, place and time of incarceration, or other disposition of the defendant" and (2) "[t]o reasonable notice of and to reasonably confer with the prosecuting agency, upon request, regarding, the arrest of the defendant."[13] Cal. Const. art. I, § 28(b)(6) & (12). "This section does not create any cause of action for compensation or damages against the State, any political subdivision of the State, any officer, employee, or agent of the State or of any of its political subdivisions, or any officer or employee of the court." *Id.* § 28(c)(2).

The plaintiffs did not oppose the dismissal of the Marsy's Law claim.[14] There is no private right of action for damages under Marsy's Law. *Burns v. City of Concord*, No. C 14-00535 LB, 2014 WL 5794629, at *20 (N.D. Cal. Nov. 6, 2014). The claim is dismissed with prejudice.

---

[13] FAC – ECF No. 21 at 11 (¶ 41).

[14] Opp'n – ECF No. 32 at 8 n.2.

### 2. Equal-Protection Claim

The plaintiffs allege that the City violated Mr. Armstead's equal-protection rights by violating his "right to have police services administered in a nondiscriminatory manner."[15]

The Fourteenth Amendment provides in relevant part: "nor shall any State deprive person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A plaintiff alleging a denial of equal protection based on race or other suspect classification "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Citing *Moua v. City of Chico*, the City contends that the claim fails because the complaint does not allege (1) differential treatment, (2) "unequal treatment . . . based on an impermissible classification," (3) discriminatory intent, and (4) injury from discrimination.[16] 324 F. Supp. 2d 1132, 1137 (E.D. Cal. 2004). The plaintiffs did not oppose the motion to dismiss the claim, but at the hearing, asked for leave to amend.[17] The plaintiffs' bare allegations of "discrimination" in policing do not state an equal-protection claim. The court dismisses the claim with leave to amend.

### 3. Due-Process Claim

The City moved to dismiss the plaintiffs' due-process claim on the ground that (1) the City does not have a general duty to protect individuals from third parties and (2) the plaintiffs did not allege a policy under *Monell* that caused the alleged due-process violation.[18] The plaintiffs plausibly pleaded a state-created danger and thus a due-process violation. But they did not allege a policy that caused the due-process violation. The court thus dismisses the due-process claim with leave to amend.

---

[15] FAC – ECF No. 21 at 14 (¶ 59).

[16] Mot. – ECF No. 26 at 19.

[17] Opp'n – ECF No. 32.

[18] Mot. – ECF No. 26 at 15–19.

### 3.1  Due-Process Claim: State-Created Danger

A state generally has no duty to "protect individuals from third parties." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (cleaned up). There are two exceptions: (1) "a special relationship between the plaintiff and the state" or (2) "affirmatively plac[ing] [the plaintiff] . . . in danger by acting with deliberate indifference to a known or obvious danger," known as the "state-created danger" doctrine *Id.* (cleaned up). The plaintiffs claim a state-created danger.[19]

To establish liability under the state-created danger doctrine, the plaintiff must show that (1) "the officers' affirmative actions created or exposed [the plaintiff] to an actual, particularized danger that she would not otherwise have faced," (2) "the injury she suffered was foreseeable," and (3) "the officers were deliberately indifferent to the known danger." *Id.* The City challenges the sufficiency of the plaintiffs' allegations on all prongs.

First, it contends that the Oakland officers did not create an actual, particularized danger.[20] But the plaintiffs allege police actions that, if true, plausibly establish creation of that danger. For example, on Thanksgiving Day 2019, the police responded to a 911 call from the Armsteads, who complained about Mr. Thomas's abuse. The police told the family, within earshot of Mr. Thomas, that they were understaffed and overworked and their calls were not a high priority. This conveyed to Mr. Thomas that he could continue to harass the Armsteads.[21] Another example is that on December 20, 2019, Mr. Thomas threw a rock through the Armsteads' front window, hitting and injuring Mrs. Armstead, who was transported by ambulance to the hospital for her serious injuries. She was eight-weeks pregnant.[22] The police responded to the scene, did not arrest Mr. Thomas for felony assault or any crime, did not question him, and, again within earshot of Mr. Thomas, told Mrs. Armstead that they would not take any action.[23] Over the next months, Mr. Thomas continued to harass the Armsteads, breaking their home's windows fourteen times, despite their

---

[19] FAC – ECF No. 21 at 12–14 (¶¶ 49–56); Opp'n – ECF No. 32 at 10.

[20] Mot. – ECF No. 26 at 16–17.

[21] FAC – ECF No. 21 at 6–7 (¶¶ 18–19).

[22] *Id.* at 7 (¶ 22).

[23] *Id.* (¶ 24).

ORDER – No. 21-cv-05257-LB                    7

seeking a restraining order (on the officers' advice).[24] The Armsteads called the police approximately twenty times during this time span.[25] These allegations plausibly establish a due-process claim based on a state-created danger. *Martinez*, 843 F.3d at 1271.

The City's argument — the danger existed regardless of the officers' conduct — is not persuasive.[26] The officers need not have "created" the danger entirely. Worsening an existing danger satisfies the first prong of the doctrine. *Martinez*, 943 F.3d at 1271 ("Whether the danger already existed is not dispositive because [the danger from third-parties] . . . in every case, could be said to have already existed.") (cleaned up).

The City also contends that there is no "specific connection" between the officers' actions and the danger. It cites several cases, including *Wood v. Ostrander*, as examples of the necessary connection.[27] 879 F.2d 583 (9th Cir. 1989). In *Wood*, a state trooper arrested a driver and left the passenger stranded "in a high-crime area at 2:30 a.m." *Id.* at 590. The passenger accepted a ride home from an unknown man, who raped her. *Id.* at 586. The court held that the trooper's conduct created a relationship with the passenger that was different from the trooper's relationship with the general public and triggered a duty to provide safety. *Id.* at 590. *Woods* involved a specific instance, which is different than the extended timeline here. But the cases both involve police action that increased the danger to a third party. Here, the police officers' non-intervention and their effectively informing Mr. Thomas that they would not intervene allegedly emboldened him and escalated his abuse. The City's other cases similarly involve police action that increased danger. *See, e.g.*, *Henderson v. City of San Jose*, 897 F.3d 1125, 1133–35 (9th Cir. 2018) (due-process claim where officers directed participants at a demonstration toward an unruly mob, which attacked the participants).

Second, the City contends that the murder of Mr. Armstead was not foreseeable, citing *Lawrence v. United States*, where the Ninth Circuit held that while it was foreseeable that a convicted drug dealer "would distribute illegal drugs[,] . . . it was not foreseeable that he would sexually abuse"

---

[24] *Id.* at 8 (¶¶ 25–27).

[25] *Id.* (¶ 27).

[26] Reply – ECF No. 34 at 6–7.

[27] *Id.* at 7.

children. 340 F.3d 952, 957 (9th Cir. 2003). It also cites *McQueen v. Beecher Cmty. Sch.*, where the court held that a child's "history of behavioral problems [did not] suggest that he would escalate from hitting with fists, feet, and pencils" to using guns or knives.[28] 433 F.3d 460, 470 (6th Cir. 2006). It also contends that the plaintiffs did not establish causation given the two-month interval between Mr. Thomas's release from jail on February 28, 2020, and the murder on May 1, 2020.[29] Citing *Kennedy v. City of Ridgefield*, the plaintiffs respond that they need show only that "the danger of injury in the circumstances was foreseeable," not the foreseeability of the "exact injury" of murder.[30] 439 F.3d 1055, 1064 n.5 (9th Cir. 2006). The City's cases do not support dismissal.

*Lawrence*, for example, involved sexual abuse of children, something so different than dealing drugs that it was not foreseeable. By contrast, Mr. Thomas, a person with mental-health issues, engaged in dangerous behavior: throwing rocks, breaking windows, injuring Mrs. Armstead, and threatening to burn down the Armsteads' house, culminating in murder.[31] The pattern of escalating violent acts plausibly establishes the foreseeability of the ultimate violent act of murder. The City's causation argument — essentially that the timeline is too attenuated — does not change this conclusion because causation involves fact issues unsuitable for resolution in a Rule 12(b)(6) motion. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013) ("Causation is an intensely factual question that should typically be resolved by a jury.").

Third, the allegations about Mr. Thomas's escalating and persistent violence and the officers' failures to intervene — including telling the Armsteads in Mr. Thomas's presence that they would do nothing — plausibly pleads deliberate indifference to a foreseeable risk based on the officers' conscious or reckless disregard of the consequences of their acts or inactions. The City nonetheless contends that even if the officers discounted the seriousness of Mr. Thomas's conduct, the officers did not intend to expose Mr. Armstead to a risk of harm because their alleged conduct

---

[28] *Id.* at 9.

[29] Mot. – ECF No. 26 at 17; Reply – ECF No. 34 at 5, 13–14.

[30] Opp'n – ECF No. 32 at 13.

[31] FAC – ECF No. at 21 at 6–10 (¶¶ 16–34); Opp'n – ECF No. 32 at 7.

happened before his behavior escalated into a pattern.[32] The officers made their statements as Mr. Thomas's conduct escalated in November and December 2019, and the plaintiffs plausibly allege a continuing pattern of violence (shown by the 911 calls) and inaction on the part of the police.

The City also contends that no facts suggest that the officers wanted to expose the Armsteads to harm. It contrasts the allegations here to the facts in *Penilla v. City of Huntington Park*.[33] 115 F.3d 707 (9th Cir. 1997). In *Penilla*, the officers were deliberately indifferent to a decedent's medical needs because they examined him, knew about the needs, cancelled a 911 call to paramedics, dragged the decedent from his porch into an empty house, and then locked the house and left him alone. 115 F.3d at 710–11. The indifference to immediate danger in *Penilla* shows a foreseeable risk of injury in a way that differs from a pattern of abuse that develops over time. But again, the plaintiffs plausibly allege that the police compounded and ignored Mr. Thomas's escalating behavior, including Mrs. Armstead's injury.[34] As with the causation argument, the court cannot conclude on a motion to dismiss that the timeline precludes deliberate indifference.

### 3.2 Monell

Because the § 1983 claim is against the City, and not against an individual actor, the plaintiffs must allege a policy or custom under *Monell* that caused the due-process violation. 436 U.S. at 690–91; *Henderson*, 2015 WL 225429, at *6 (in an analogous failure-to-warn case against a county, a mentally ill person was released from county jail and killed his parents; the court required the *Monell* predicate for the due-process claim).

To impose *Monell* entity liability under § 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

---

[32] Mot. – ECF No. 26 at 18; Reply – ECF No. 34 at 11–12.

[33] Reply – ECF No. 34 at 11–12.

[34] FAC – ECF No. 21 at 7 (¶ 22); Opp'n – ECF No. 32 at 14.

The Ninth Circuit has explained how a policy may be established:

> There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (cleaned up); *accord, e.g.*, *Parker v. City of Pittsburg*, No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017). The practice or custom must consist of more than "random acts or isolated events" and instead, must be the result of a "permanent and well-settled practice." *Thompson v. City of L.A.*, 885 F.2d 1439, 1443–44 (9th Cir. 1988) (cleaned up), *overruled on other grounds by Bull v. City and Cnty. of S.F.*, 595 F.3d 964 (9th Cir. 2010); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Thus, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless" there is proof that the incident "was caused by an existing, unconstitutional municipal policy. . . ." *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) ("Isolated or sporadic incidents" are not enough).

At the pleadings stage, and with fact allegations here that approximate those in *Henderson*, the plaintiffs must plead practice or custom, but need not plead more. In *Henderson*, for example, the plaintiffs pleaded that the County had the following policies:

- A policy "whereby inmates with severe mental health problems and known propensities to commit harm to civilians are released from the Santa Cruz County Jail into homelessness where they pose an imminent threat of harm to civilians upon their release," FAC ¶ 88;
- A policy "whereby civilians who have been threatened by dangerous inmates housed at the Santa Cruz County Jail are not given notice prior to the release of dangerous inmates who pose a specific threat of danger and harm to civilians," FAC ¶ 89; and
- A policy "whereby civilians are given false assurances by the [defendants] that they would be notified prior to the release of inmates who have made specific threats of violence against them prior to the release of the inmates," FAC ¶ 90.

*Henderson*, 2015 WL 225429, at *6. The court denied the motion to dismiss the due-process claim because "[i]n combination, these policies would have caused the plaintiffs' alleged constitutional deprivation." *Id.* It also held that "[a]t this point in the proceedings, plaintiffs have not pleaded

sufficient facts to support the existence of such policies, but that evidence is not necessary at the motion to dismiss stage" because there is no heightened pleading standard for *Monell* claims. *Id.* (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167–68 (1993), and *Empress LLC v. City of S.F.*, 419 F.3d 1052, 1055 (9th Cir. 2005)).

The plaintiffs allege that the officers were overextended and could not prioritize the plaintiffs' calls for help in this case. But they did not allege that this was a policy or practice that is standard operating procedure. The court can almost draw the inference but concludes that the plaintiffs must allege the policy or practice specifically. The court dismisses the claim without prejudice.

**4. Negligence**

The plaintiffs plausibly pleaded a negligence claim for the reasons that they plausibly pleaded a due-process claim. "[A]ffirmative acts" by police officers that increase the risk of harm to a member of the public can establish a special relationship between the officers and the person at risk. *Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th 1112, 1129 (2002) ("Liability may be imposed . . . if an officer undertakes affirmative acts that increase the risk of harm to the plaintiff."); *cf. Ikeda v. City & Cnty. of Honolulu*, No. 19-cv-00009-DKW-KJM, 2019 WL 4684455, at *8 (D. Haw. Sept. 25, 2019) ("police officers are under a duty to avoid any affirmative acts which worsen the situation of the plaintiff") (cleaned up). The plaintiffs plausibly pleaded affirmative conduct — the police officers' continued inaction and communications to the Armsteads in Mr. Thomas's presence that they would do nothing — that increased the danger to Mr. Armstead.

Citing *Hartzler v. City of San Jose*, the City contends that the police had no special relationship with the plaintiffs and owed them no duty.[35] 46 Cal. App. 3d 6, 10 (1975). In *Hartzler*, the court held that the police did not have a special relationship with a murder and domestic-violence victim, even though police officers had responded to the victim's residence more than twenty times before the murder, because the police had not "induced decedent's reliance on a promise, express or implied, that they would provide her with protection." *Id.* But unlike in *Hartzler*, the officers here

---

[35] Mot. – ECF No. 26 at 11–12.

allegedly emboldened Mr. Thomas by saying within earshot of him that they would do nothing.[36] This affirmative conduct that increased the risk of harm distinguishes this case from *Hartzler*.

The City also contends that the time between Mr. Thomas's release and Mr. Armstead's murder (February 28, 2020, and May 2020) means that the plaintiffs do not plausibly plead causation.[37] As discussed in the due-process section, the plaintiffs plausibly pleaded causation.

The City also maintains that it is immune under Cal. Gov't Code §§ 845 and 846 for its failure to provide police protection, failure to arrest Mr. Thomas, and failure to keep him in custody.[38] It is not immune because the plaintiffs do not challenge protected police decisions and instead assert negligence in the form of a state-created danger, which is not immunized police action.

"Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." Cal. Gov't Code § 845. "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody." Cal. Gov't Code § 846. The statutes protect policy and resource decisions or promote other public goals. Section 845, for example, protects the budgetary and policy decisions in hiring and deploying a police force. *Wallace v. City of L.A.*, 12 Cal. App. 4th 1385, 1402 (1993). It does not immunize an officer's "negligence in the performance of his duty in a particular situation." *Id.* Section 846 provides immunity — for public-policy reasons — when a police officer releases someone who then harms another person. *Lum v. Cnty. of San Joaquin*, 756 F. Supp. 2d 1243, 1256–57 (E.D. Cal. 2010) (citing *Santa Barbara v. Super. Ct.*, 15 Cal. App. 3d 751 (1971) and *Lehto v. City of Oxnard*, 171 Cal. App. 3d 285, 217 (1985)). Here, the plaintiffs do not challenge immunized decisions and instead claim negligence in the form of a state-created danger. The City is not immune.

---

[36] FAC – ECF No. 21 at 6–7 (¶ 19); Reply – ECF No. 34 at 8.

[37] Mot. – ECF No. 26 at 12–13.

[38] *Id.* at 13; Reply – ECF No. 34 at 13.

**5. Bane Act**

The City moved to dismiss the Bane Act claim on the ground that the plaintiffs did not plausibly plead a constitutional violation or that the City acted with the requisite intent to violate that right.[39] As discussed above, the plaintiffs plausibly pleaded a due-process claim.[40] The issue is only whether the plaintiffs plausibly pleaded intent.

The Bane Act protects against interference or attempted interference with a person's rights under "the Constitution or laws of the United States" when the interference is carried out by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a); *Cornell v. City and Cnty. of San Francisco*, 17 Cal. App. 5th 766, 791 (2017) (protects against "all conduct" aimed at interfering with these rights).

Nothing in the text of the Bane Act requires that the "threat, intimidation, or coercion" be independent from the alleged constitutional violation. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell*, 17 Cal. App. 5th at 800). For example, in *Cornell*, the California Court of Appeal said that "the use of excessive force can be enough to satisfy the 'threat, intimidation, or coercion' element of" § 52.1. 17 Cal. App. 5th at 799 (limiting an earlier case's holding — that coercion needs to be independent from the coercion inherent in the wrongful detention at issue — to cases involving mere negligence). But the Bane Act imposes an additional requirement beyond the finding of a constitutional violation: "properly read, the statutory phrase 'threat, intimidation, or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." *Id.* at 800. In *Cornell*, which involved a claim for false arrest, the court held that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* at 801–02.

---

[39] Mot. – ECF No. 26 at 20; Reply – ECF No. 34 at 14–15.

[40] The *Monell* issue is not relevant because the plaintiffs' theory of liability against the City under the Bane Act is respondeat superior. *Bosworth v. City of San Jose*, No. 18-cv-05459-NC, 2020 WL 512340, at *13 (N.D. Cal. Jan. 30, 2020) (citing *Venegas v. Cnty. of L.A.*, 153 Cal. App. 4th 1230, 1244–46 (2007)).

Applying *Cornell* and *Reese* to this case, the Bane Act does not require that the "threat, intimidation, or coercion" element of the Bane Act claim be "transactionally independent from the constitutional violation alleged." *Reese*, 888 F.3d at 1043 (citing *Cornell*, 17 Cal. App. 5th at 800). The inquiry is whether the plaintiffs alleged sufficiently that the defendant had the specific intent to violate the plaintiffs' due-process rights under the state-created-danger doctrine. *Id.*; *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (the plaintiffs must show that the County and City impounded the plaintiffs' cars with the specific intent to violate their Fourth Amendment rights). The "specific intent" inquiry is focused on two questions: (1) "[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case," and (2) [d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?" *Sandoval*, 912 F.3d at 520 (quoting *Cornell*, 17 Cal. App. 5th at 803). If the two requirements are met, then "specific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right." *Id.* (quoting *Cornell*, 17 Cal. App. 5th at 803).

In *Luttrell v. Hart*, the court held that by pleading deliberate indifference sufficiently, a plaintiff alleged the specific intent for a Bane Act claim. No. 5:19-cv-007300-EJD, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020) (collecting cases). That reasoning is persuasive: by pleading deliberate indifference, the plaintiffs here alleged the specific intent required for the Bane Act claim.

In *Luttrell*, Sheriff's deputies stopped the plaintiff because he did not have a light on his bicycle, conducted a probation search, and found a small knife on his belt, a violation of the terms of probation, which resulted in a 90-day sentence. While awaiting transfer to a lower-security facility, the plaintiff, a non-violent offender, was housed with two violent offenders. The plaintiff complained about his housing, but his complaints were ignored. The plaintiff complained again after his cellmates threatened him, but his complaints were denied. During a 48-hour lockdown, the threats escalated, and the cellmates sexually assaulted the plaintiff and, after the plaintiff was let out for a shower, beat him. No one did any safety checks. The plaintiff claimed a custom and practice to (1) staff the jails insufficiently, resulting in an inability to perform routine safety checks, and (2) not require physical inspection of inmates during safety checks. *Id.* at *1–2.

The *Luttrell* plaintiff claimed deliberate indifference for a knowing failure to protect him from other inmates, in violation of the Eighth Amendment and the Bane Act. *Id.* at *2–3 (deliberate indifference is knowing and disregarding an excessive risk to inmate health or safety by failing to take reasonable steps to abate it; it is more than mere negligence "but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result") (quoting *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). The *Lutrell* court held, "if a plaintiff adequately pleads a claim for deliberate indifference, which requires a pleading of reckless disregard, then he has sufficiently alleged the intent required for the Bane Act claim." *Id.* at *5 (citing Eighth Amendment medical-needs cases holding that a viable claim of deliberate indifference satisfies the intent element of the Bane Act). Here, the plaintiffs similarly pleaded deliberate indifference and the allegations are sufficient to state a claim under the Bane Act. The court denies the City's motion to dismiss the Bane Act claim.

## CONCLUSION

The court dismisses the Marsy's Act claim with prejudice and the due-process, equal-protection, and negligent hiring-and-supervision claims without prejudice. The court otherwise denies the City's motion to dismiss. The plaintiffs may file an amended complaint within 35 days from the date of this order. Any amended complaint must attach a blackline of the amended complaint against the current complaint. This disposes of ECF Nos. 25 and 26.

**IT IS SO ORDERED.**

Dated: March 26, 2022

_____
LAUREL BEELER
United States Magistrate Judge